IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 21, 2002

## STATE OF TENNESSEE v. DONALD E. BRYANT

**Direct Appeal from the Circuit Court for Blount County**
**No. C-12446 & C-12447     D. Kelly Thomas, Jr., Judge**

_____

**No. E2001-01255-CCA-R3-CD**
**September 5, 2002**
_____

Following a bench trial, Defendant, Donald E. Bryant, was found guilty of two counts of aggravated assault and one count of misdemeanor theft. He was sentenced as a persistent Range III offender to serve twelve years for each aggravated assault, and eleven months and twenty-nine days for the misdemeanor theft; all sentences were ordered to be served concurrently. In this appeal, Defendant challenges the sufficiency of the evidence to support the two convictions for aggravated assault. After reviewing the record and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Julie A. Rice, Knoxville, Tennessee (on appeal only); Mack Garner, District Public Defender, Maryville, Tennessee (on appeal and at trial); and Shawn Graham, Assistant Public Defender, Maryville, Tennessee (at trial only) for the appellant, Donald E. Bryant.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Michael L. Flynn, District Attorney General; and William R. Reed, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The State's proof showed that on October 18, 1999, Defendant entered the Lowe's Home Improvement Warehouse in Blount County to return four items. Defendant was issued an in-store credit. After the transaction was completed, the merchandise return clerk notified Stacy Ivey, the store's Loss Prevention Specialist, that Defendant's conduct was suspicious and the return was "questionable." The clerk communicated with Ivey via a two-way radio contained in a cellular telephone unit. Defendant had just left the service desk and was headed toward Lowe's electronics

department when Ivey received the clerk's alert. He then observed a man fitting the clerk's description of Defendant enter the electronics department. The man was carrying no merchandise at the time.

Ivey hurried to his office and watched Defendant with the store's hidden camera surveillance system. David Dockery, a managerial employee of the store, observed Ivey dart past him and followed him into the camera room. The two men observed Defendant lingering in aisle six, where the telephones were located. Defendant appeared nervous; he was looking back and forth, seemingly to make sure that no one was watching him. The men saw Defendant pick up a packaged telephone, open the box, and begin to remove various items from it. Defendant took a battery and another item from the box and placed them inside his coat. Defendant momentarily stepped away from the shelf containing the merchandise, and then stepped back and took a power charger and an additional item from the box, also placing these items inside his coat. At this point, Dockery left the camera room and entered the main floor sales area. Ivey remained in the camera room and continued watching Defendant with the surveillance system.

Shortly thereafter, Defendant picked up a telephone on display (which was not inside of a box) and walked toward the front of the store. Defendant then exited the Lowe's store, without making any effort to pay for the merchandise in his possession. Ivey left his office at once and ran outside the store. Dockery was ahead of him, and the two men approached Defendant to confront him about the apparent theft of property. Ivey testified at trial that he heard Dockery say, "Excuse me or something to that effect," as Dockery drew near Defendant.

Defendant immediately spun around to face Ivey and Dockery. According to Ivey, Defendant assumed a "defensive posture," opened a lock-blade knife, and held it toward them in a threatening manner. The blade on the knife was approximately three inches long. With the knife extended, Defendant told Ivey and Dockery that he was "going to cut their f---ing heads off." The two men started backing away. Ivey and Dockery testified at trial that, at this point, they were in fear of Defendant and of being harmed by the knife.

Defendant then began running in the general direction of the victims, with the knife still in his hand. Ivey and Dockery turned to run, but Defendant proceeded past them toward his vehicle. They noted the license tag number of the vehicle. In addition, Ivey and Dockery identified Defendant from the picture on his driver's license, which the merchandise return clerk had obtained a copy of earlier, when the return transaction was made.

The incident was reported promptly to the police. During the subsequent investigation, two of Defendant's fingerprints were lifted from the package containing the telephone he had handled while inside the store. The victims, Ivey and Dockery, each picked Defendant as the thief/assailant from a photo line-up conducted later by a police detective, and each victim also identified Defendant as the thief/assailant during the bench trial which followed. Dockery testified that he was approximately one foot away from Defendant when he said "excuse me" to Defendant. Ivey stated that he was approximately six feet from Defendant when the knife was pulled out.

During his testimony at trial, Defendant denied that he stole anything from Lowe's. He admitted that he was the person observed on the security tape who had been looking at a telephone inside the store. However, he claimed that he did not hide or remove any items from the package containing the telephone.

Defendant further admitted picking up the telephone on display and carrying it to the next aisle, but he claimed that he left it on a shelf because he had decided not to purchase it. Defendant testified that later, as he was walking to his car, he heard someone running toward him. Before he could turn around, however, Dockery had jumped upon him and grabbed him around the neck. When Defendant wrested away from Dockery and asked the two men what they wanted, they said nothing. Defendant claimed that he then got into his car and left. A videotape of the incident in the parking lot is not available because it occurred outside the scope of the exterior security cameras.

Defendant also admitted that he had a knife in his pocket when he talked to Ivey and Dockery, but he denied pulling it out in the parking lot. He also denied that he made threatening remarks to the victims. Defendant additionally testified that, as he drove away, a third man came at him and started kicking the side window of his car.

**ANALYSIS**

Defendant contends that the evidence was insufficient to convict him of aggravated assault because "reasonable" persons would not have feared imminent bodily injury under the circumstances presented in this case. Defendant further argues that, even if there was sufficient proof to find that the victims had a reasonable fear of injury, his convictions cannot stand because the victims effectively consented to his conduct. We disagree.

On appeal, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Accordingly, we will not reweigh the evidence, but instead, we will presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility are resolved by the trier of fact. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Although the defendant was convicted in a bench trial, the findings of the trial judge carry the same weight as a jury verdict. State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999).

Defendant was convicted of one count of aggravated assault against Ivey, and one count of aggravated assault against Dockery. As charged in the indictment, aggravated assault is committed when a person "[i]ntentionally or knowingly commits an assault as defined in § 39-13-101, and . . . uses or displays a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(1)(B) (1997). As relevant here, Tennessee Code Annotated section 39-13-101 provides that "[a] person commits assault who

. . . intentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2).

First, we find that the evidence was indeed sufficient for a rational jury to conclude that Defendant pulled a knife and threatened the victims, Ivey and Dockery, and that they in turn feared imminent bodily injury under the circumstances presented in this case.

Defendant's second argument, concerning a defense of "effective consent," is based on his assertion that the victims, Ivey and Dockery, effectively consented to his alleged criminal conduct by being involved with store security as part of their employment. Defendant cites Tennessee Code Annotated section 39-13-104, which provides:

> Effective consent. – When conduct is charged to constitute an offense under this part because it causes or threatens bodily injury, effective consent to such conduct or to the infliction of such injury is a defense if:
> (1) The bodily injury consented to or threatened by the conduct consented to is not serious bodily injury; or
> (2) *The conduct and the harm are reasonably foreseeable hazards*:
> (A) Of joint participation in a lawful athletic contest or competitive sport; or
> (B) For any concerted activity of a kind not forbidden by law.

(Emphasis added.)

Defendant argues that his conduct in the parking lot, and the alleged harm which resulted, should be considered a "reasonably foreseeable hazard" to those employees of Lowe's whose job entails the possibility of dealing with shoplifters.

Defendant's reliance upon this defense is misplaced. Tennessee Code Annotated section 39-11-106(a)(9) defines "effective consent" as "assent in fact, whether express or apparent, including assent by one legally authorized to act for another. Consent is not effective when . . .*[g]iven solely to detect the commission of an offense.*" (Emphasis added.) As stated above, Defendant's theorizes that the victims gave their effective consent to the conduct committed by Defendant by accepting responsibility for confronting persons who allegedly commit theft. However, Ivey and Dockery were obviously in the process of *detecting whether or not a criminal offense had been committed.* Therefore, by statutory definition, "effective consent" is not a defense in this case. Based upon the proof contained in the record, we further find that a reasonable juror could clearly reject Defendant's theory.

As previously noted, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). In determining whether the evidence was sufficient, the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt. <u>State v. Evans</u>, 838 S.W.2d 185, 190-91 (Tenn. 1992). Our review of the proof, taken in the light most favorable to the State, clearly shows that Defendant's guilt of both offenses of aggravated assault were proven beyond a reasonable doubt, and that a reasonable trier of fact could come to that conclusion. The defense of effective consent does not apply here. Accordingly, Defendant is not entitled to relief in this appeal.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court regarding the two convictions for aggravated assault, the one conviction for misdemeanor theft, and the sentences imposed thereon.

_____
THOMAS T. WOODALL, JUDGE